VAHAN BASMAJIAN, Administrator of the Goods, Chattels and Credits of ASHOD BASMAJIAN, Deceased, Plaintiff, *v.* BOARD OF EDUCATION OF THE CITY OF NEW YORK, Defendant.

Supreme Court, New York County, February, 1924.

Negligence — board of education, city of New York — disrepair of wire mesh roofing over cellar stairs — death of child — condition of roofing proximate cause of accident — motion to set aside verdict and for new trial denied.

Plaintiff's intestate, a registered pupil in an elementary public school in The Bronx, while playing upon a wire mesh roofing covering a stair well in the school yard, fell through a hole in the wire mesh down to the stairs below and sustained injuries from which he almost immediately died. Although the defendant, the board of education of the city of New York, for more than three weeks before the accident had knowledge that the wire mesh roofing was in disrepair, it did not repair it. *Held*, that the proximate cause of the injuries to plaintiff's intestate was that the wire mesh covering was in disrepair, and a motion to set aside a verdict in favor of the plaintiff and for a new trial, upon the ground that plaintiff's intestate was guilty of contributory negligence, will be denied.

MOTION to set aside verdict and for a new trial.

*Dicran Simsarian* (*John W. Goff, Jr.*, of counsel), for plaintiff.

*George P. Nicholson*, corporation counsel (*Charles C. Marrin*, of counsel), for defendant.

CRAIN, J. This action, which was brought to recover damages for the death of the plaintiff's intestate through the alleged negligence of the defendant, has resulted in a verdict for the plaintiff of $2,500. The defendant has moved to set this verdict aside and for a new trial, contending that plaintiff's intestate was guilty of contributory negligence. On October 4, 1920, the plaintiff's intestate, a boy of between ten and eleven years, was a registered pupil in an elementary public school on One Hundred and Seventy-third street and Fulton avenue, in The Bronx. The school had an enrollment of about 2,800, and of these about 2,400 were Jewish children. The day in question was observed by Jews as a holy day, and Jewish children were informed shortly before the day that they need not

attend school on this holy day. They were also told that if they decided not to attend they were not to come upon the school premises on that day. The day was not a legal holiday and the school was open during the school hours for the reception of pupils, and part of the school course consisted in supervised play in the schoolyard. The principal and some of the teachers were in attendance upon the premises. The p'aintiff's intestate was not a Hebrew, and he was directed by his father to attend school. He started for and arrived during school hours with a boy companion at the gate which opened from the street into the schoolyard and found boys playing, who told him it was a holiday. He remained playing in the yard with some of them while the school was in session. No teacher appears to have been in attendance in the yard and the boys there appear not to have been supervised. This yard, sometimes called a " playground," was as much a part of the school premises as a hall or classroom in the school building. In this yard and by the side of one of the outer walls of the school building, steps  ed to the cellar level. These stairs were for the use of girl pupils and led to the girls' toilet. These stairs were inclosed on two sides by wire mesh in iron frames. One of these wire mesh sides ran parallel to the school wall and along the yard side of the steps and the other wire mesh side ran at right angles to the school wall and at the end of the stairwell. The fourth side was open and access to the steps was obtained by passing through the opening. The wire mesh sides referred to were seven and one-half feet high. The entire space over the stairwell was covered with like wire mesh set in iron frames. This covering roofed over the stairwell. Its primary purpose was doubtless to arrest the fall of any object which might be thrown or which might fall from the roof or from any window located above the stairs and in the wall referred to and by arresting any such falling object to protect those who might have occasion to use the stairs. This roof or covering was easily reached by children playing in the yard and was often used by children as a part of the yard with the knowledge but despite the oral and written prohibition of the principal and teachers. On the day in question the deceased, following this usage of the children, climbed upon this wire mesh covering or roof and played upon it, either alone or in company with others. His hat appears to have fallen down while he was on the roof to the yard level and to have been thrown up to him and, apparently, in going over the wire mesh roofing to get his hat, he fell through a hole in the wire mesh down to the stairs below, and through this fall he received injuries from which he almost immediately died. The defendant had knowledge that the roof was in disrepair and that there was a hole in it, and this knowledge

came to it more than three weeks before the day upon which plaintiff's intestate fell through the hole, but it had not caused the wire mesh to be repaired. What befell the plaintiff's intestate was neither a usual nor an ordinary accident, but it was a happening which might have been foreseen by reason of the use which pupils made of the wire mesh covering and the continued presence of the hole in the mesh, and it might have been guarded against by the defendant by the exercise of reasonable care and prudence. The structure upon which the plaintiff's intestate was, was strong enough to sustain his weight, and had it been in repair he would not have met with the injuries which caused his death. The deceased was not a trespasser upon the school premises, although when he fell through the hole he was where he should not have been. This was so because such wire mesh covering was not intended to be used as a walking, running or playing place for children. It was not put up with a view to safely sustain the weight of a human body. It was doubtless placed where it was solely for the purpose above outlined. Moreover, by school disciplinary provisions to which the deceased as a pupil was properly subject, he and other pupils were forbidden to go upon this covering. The defendant is plainly liable in damages, unless the fact that the deceased was where he should not have been precludes recovery. Or, unless on the undisputed facts, it must be held as a matter of law that plaintiff's intestate was guilty of contributory negligence. The case of *Jaked* v. *Board of Education*, 198 App. Div. 113; affd., 234 N. Y. 591, answers the first question in the negative and indicates that the question of contributory negligence was properly for the jury. In that case a girl attending a public school in the city of Albany had her leg broken while swinging on an iron gate at the entrance to the schoolhouse intended solely for the use of teachers and visitors to the school. The gate in question, owing to the absence of any fastening which would hold it when open and prevent it from swinging back against the wall of the schoolhouse, swung back against this wall, and her injury was received because her leg was caught between the gate and the wall. The gate had been in disrepair for some time, due to the absence of such a fastening. There was no other charge of negligence against the defendant than the failure to provide a means of fastening the gate when open. In the case cited the injured girl had no more right to use the gate as a swing than had the plaintiff's intestate to use this wire mesh covering as a place upon which to climb and play. In the case cited the proximate cause of the plaintiff's injury was not that she placed her weight upon the gate, but that it was in disrepair and so came back against the wall. In the case at bar the proximate cause of the injuries to

the plaintiff's intestate was not that he used the wire mesh covering as a place upon which to climb and play, but that it was in disrepair. But for this decision I would grant defendant's motion.    Motion denied.    Stay thirty and sixty days.

Ordered accordingly. _____